UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY KIMMINS,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of the Social Security Administration,<br><br>    Defendant. | Case No.: 12-cv-4206-YGR<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

On August 9, 2012, Plaintiff Anthony Kimmins filed this action seeking judicial review of Administrative Law Judge ("ALJ") Michael Blume's decision that he is not disabled under section 1614(a)(3)(A) of the Social Security Act. Pending before the Court are the parties' cross-motions for summary judgment. Kimmins seeks summary judgment in his favor because the ALJ purportedly erred in: (i) finding that his mental impairments were non-severe; (ii) evaluating and rejecting particular medical opinions; (iii) disregarding evidence of his prior benefits award without explanation; and (iv) determining Kimmins' residual functional capacity. Defendant Commissioner Michael J. Astrue[1] contends that the ALJ made no reversible errors of law and that substantial evidence supported the ALJ's decision. However, as an alternative argument, Defendant asserts that if the Court finds the ALJ committed reversible error, the matter should be remanded for further administrative proceedings.

Plaintiff filed his Motion for Summary Judgment ("Motion") on March 18, 2013. (Dkt. No. 19.) On April 15, 2013, Defendant filed a Cross Motion for Summary Judgment and in Opposition

---

[1] The parties agree that pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should be substituted for Michael J. Astrue as defendant in this action.

to Plaintiff's Motion for Summary Judgment ("Cross-Motion"). (Dkt. No. 20.) Plaintiff filed a Reply Brief in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion for Summary Judgment on April 29, 2013 ("Reply"). (Dkt. No. 21.)

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS IN PART** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross-Motion for Summary Judgment.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On December 23, 2002, Plaintiff was granted Title XVI Supplemental Security Income ("SSI") benefits based on "Schizophrenic, Paranoid and Other Functional Psychotic Disorders" and a secondary diagnosis of "Personality Disorders." (Record of Proceedings ["Record"] at 156.) Plaintiff's benefits were terminated in 2004, due to his incarceration on May 14, 2003. (*Id*. at 157, 190.) Kimmins was released on December 11, 2008. (*Id.* at 262.)

On January 12, 2009, Plaintiff filed a Title XVI SSI application, which is the subject of the present action. (Record at 138.) Plaintiff asserted a disability beginning on June 22, 2002 and identified the following conditions as limiting his ability to work: "[g]un shot wound, cataracts, lung disease (boloc), polycystic kidney disease, high blood pressure, chronic asthma, [and] lower back pain." (*Id*. at 183; *see id.* at 651–52 (also identifying mental problems and his prior disability determination.)[2] Plaintiff previously worked as a merchandise driver and auto parts clerk (*id.* at 19), and testified that injuries sustained while working in that position forced him to cease working (*id*. at 44).

The Social Security Administration ("SSA") denied Plaintiff's claim on March 27, 2009, and affirmed upon reconsideration on May 4, 2009. (Record at 59–63, 67–70.) On May 15, 2009, Plaintiff filed a request for a hearing before an ALJ. (*Id*. at 71–73) Plaintiff appeared unrepresented at the requested hearing on May 13, 2010 and, when asked by the ALJ where his records could be located, informed the ALJ that he "was on SSI in 2002" but had been incarcerated thereafter. (*Id*. at

---

[2] In the pre-hearing brief submitted by Plaintiff's counsel prior to the hearing before the ALJ, Plaintiff stated that he sought "disability benefits based on his diagnoses of depression[] NOS ["Not Otherwise Specified"], psychosis[] NOS, chronic kidney disease (stage 3), chronic asthma, high blood pressure, and lung disease." (Record at 249.)

2

30, 32–33.) In response, the ALJ clarified that he was asking about records for the "last few years." (*Id*. at 33.) The ALJ continued the matter to allow the Plaintiff an opportunity to obtain representation. (*Id*. at 35–36.)

On March 8, 2011, Plaintiff appeared with counsel and testified before the ALJ at the hearing. (Record at 40.) The ALJ also took testimony from Ronald Morrell, a vocational expert ("VE") and considered the opinions of psychological consultative examiner Dr. Lorraine Schnurr, internist consultative examiner Dr. Philip Seu, and two state agency reviewing psychiatrists, Dr. K. Loomis and Dr. David E. Gross. (*Id.* at 18–19, 40, 59, 611–43, 660–62.) Thereafter, on April 12, 2011, the ALJ issued an unfavorable decision denying Plaintiff's claim for SSI (the "Decision"). (*Id*. at 8–21.) Plaintiff filed a timely request for review of the Decision, which was denied on June 5, 2012. (*Id*. at 1–7.)

Plaintiff thereafter filed the instant action seeking judicial review of the ALJ's Decision. (Dkt. No. 1.)

## II. APPLICABLE LEGAL STANDARDS

This Court has jurisdiction under 42 U.S.C. section 405(g). The Court may reverse the ALJ's decision only if it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Where the evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ. *Burch*, 400 F.3d at 679.

The SSA uses a five-step sequential framework to determine whether a claimant is disabled. At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). A person is involved in substantial work activity if he or she engages in work that involves "significant physical or mental activities." 20 C.F.R. § 416.972(a). Gainful work activity is defined as "work usually done for pay or profit," regardless of whether the claimant receives a profit. 20 C.F.R. § 416.972(b). If the claimant is engaged in substantial gainful activity,

he is not disabled. If the claimant does not engage in substantial gainful activity, then the ALJ proceeds to step two of the evaluation.

At step two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c). A "severe" impairment is defined in the regulations as one that "significantly limit[s] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921. If the claimant does not have a severe impairment or combination of impairments, he is not disabled. If the claimant does have a severe impairment or combination of impairments, then the ALJ proceeds to step three. The Ninth Circuit has described "the step-two inquiry [a]s a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

At step three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. §§ 416.920(d), 416.925 & 416.926. If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. 20 C.F.R. § 416.920(d). If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the ALJ proceeds to the next step.

Before reaching step four in the sequential evaluation, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). A claimant's RFC consists of his ability to engage in physical and mental work activity on an ongoing basis, in spite of any limitations from impairments. 20 C.F.R. § 416.945(a)(1). The ALJ considers both severe and non-severe impairments in determining the claimant's RFC. 20 C.F.R. §§ 416.920(e), 416.945.

At step four, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 416.920(f). If the claimant has the RFC to perform past relevant work, he is not disabled. If the claimant is unable to do past relevant work or has no past relevant work, the ALJ proceeds to the final step in the sequential evaluation.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant can perform any other work besides past relevant work. 20 C.F.R.

1 § 416.920(g).  If the claimant can perform other work, he is not disabled.  If the claimant cannot
2 perform other work and fulfills the duration requirement, he is disabled.

3       The burden of proof rests with the plaintiff in the first four steps to show that he or she is
4 disabled.  *Bustamante v. Massanari*, 262 F.3d 949, 953–954 (9th Cir. 2001).  An ALJ has an
5 "affirmative duty to assist the claimant in developing the record at every step of the inquiry." *Id*. at
6 954 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 n.3 (9th Cir. 1999)); 20 C.F.R. § 404.1512(d).  At
7 step five, the burden of proof then shifts to the Commissioner to show that the claimant is not
8 disabled.  *Bustamante*, 262 F.3d at 954.

**III.   DISCUSSION**

    **A.   The ALJ's Decision**

      The ALJ applied the five-step sequential analysis to determine whether Plaintiff was disabled and eligible for SSI benefits.  In the procedural history section at the outset of the Decision, the ALJ stated that while "the claimant asserted he was found disabled based on schizophrenia beginning in 2002, . . . there is no evidence in this record of any prior determination of disability." (Record at 11.)  The ALJ then proceeded to the five-step sequential evaluation.

      At step one, the ALJ determined that Plaintiff was "not engaged in substantial gainful activity since January 1, 2009, the application date." (Record at 13.)  At step two, the ALJ determined that Plaintiff "has the following severe impairments: status post[-]2002 low left extremity gunshot wound with residual chronic low back pain, chronic kidney disease, hypertension, and chronic obstructive pulmonary disease." (*Id*.)  The ALJ further determined that Plaintiff suffered from various non-severe physical and mental impairments, which "d[id] not cause more than minimal limitation in his ability to perform basic mental work activities." (*Id*. at 13–14.)  The ALJ found that Plaintiff received "intermittent conservative treatment" for his mental impairments, but that treatment was "limited to prescribed medication." (*Id*. at 14.)  The ALJ acknowledged Plaintiff's claim of hearing voices between 2002 and 2009, but pointed out that when asked about the voices at the hearing, he expressed concern about an attacker's impending release.  (*Id*.)[3]  The ALJ concluded that Plaintiff was neither suffering from paranoia nor auditory hallucinations, but was experiencing a "rational

---

[3] Plaintiff was the victim of a violent crime in 2002.  At the time of the hearing, his attacker was soon to be released from prison.  (Record at 14.)

fear." (*Id.*)  The ALJ further found that the record did not indicate that Plaintiff's recommended treatment was inadequate to treat his mental health, so long as he adhered to the treatment regime. (*Id*. at 15.)  The ALJ thus found Plaintiff's mental impairments to be non-severe. (*Id*.)

At step three, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments" under the regulations. (Record at 15.)  As a result, before proceeding to step four, the ALJ made a determination regarding Plaintiff's RFC, considering "descriptions and observations of [Plaintiff's] limitations from [his] impairment(s), including limitations that result from [his] symptoms, such as pain[.]"  20 C.F.R. § 416.945(3).  The RFC determination provided as follows:

> [C]laimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; he is limited to occasional postural activities such as stooping, kneeling, crouching, and crawling; he must avoid exposure to unprotected heights.  Consistent with my findings above[,] I find that the claimant has no severe mental limitations, having only slight limitations in activities of daily living, social functioning, and concentration, persistence and pace.

(Record at 15.)  The ALJ also noted that Plaintiff got along with his children, drove, watched television, and assisted in the care of his quadriplegic son.  (*Id*. at 16.)  The ALJ stated that some of the physical and mental abilities required to perform these activities were "the same as those needed to maintain employment," and found that Plaintiff's participation in such activities undermined his credibility with regard to his disability claim.  (*Id*.)

The ALJ made several other credibility findings in connection with his RFC determination. The ALJ found that Plaintiff's inconsistent reports of recreational drug use and his "noncompliance with prescribed treatment" diminished his credibility, suggesting that these factors may indicate that Plaintiff's symptoms are not as severe as he claimed.  (Record at 16.)  The ALJ also considered the third-party function report of Plaintiff's mother, Ruth Kimmins, in which she reported that Plaintiff "was inconsistent with his medications [and would] forget[] to take them" but "he was able to manage his self-care, go out alone, drive a car, go shopping, talk on the phone, visit with friends, and manage his finances."  (*Id*.)  The ALJ found that Plaintiff's claim of total disability was not credible in light of Ms. Kimmins' statements.  (*Id*.)

6

In making the RFC determination, the ALJ gave "little weight" to the conclusions of examining psychologist, Dr. Schnurr. (Record at 18.) Dr. Schnurr diagnosed Plaintiff with depression NOS, psychosis NOS, cannabis dependency by history, and cocaine abuse by history. (*Id*.) Dr. Schnurr determined that Plaintiff had poor ability to: (i) understand, remember, and carry out instructions; (ii) maintain concentration and persistence; (iii) perform activities within a schedule and maintain regular attendance; (iv) complete a normal workweek without interruptions from psychological symptoms; and (v) respond appropriately to others in a work setting. (*Id*.)

The ALJ also stated that Dr. Schnurr's findings were "based only on a snapshot" and were inconsistent with the chronology of record. (Record at 19.) Specifically, the ALJ found that Plaintiff's lack of mental health treatment (despite regular treatment for physical impairments), his admitted daily activities, and his inconsistent use of prescribed medication diminished the evidentiary value of Dr. Schnurr's findings. (*Id*.) The ALJ instead gave greater weight to the findings of the state agency reviewing psychiatrists, who deemed Dr. Schnurr's opinion to be "poorly supported," and found Plaintiff's mental impairments to be non-severe. (*Id*.)

Having made the RFC determination, the ALJ proceeded to step four and relied on the opinion of a VE in finding that Plaintiff was unable to perform his previous work as a merchandise driver and auto parts clerk. (Record at 19.)

At step five, the ALJ held that, considering the Plaintiff's RFC, age, education, and work experience, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Record at 20.)

### B.     ALJ's Purported Errors

As noted above, Plaintiff argues that the ALJ committed four primary errors. First, the ALJ erroneously held Plaintiff's mental impairments were non-severe at step two. Plaintiff argues that he is entitled to a presumption of disability based on the prior finding of disability and consequent award of benefits in 2002. Having provided the ALJ with a citation from the claims file regarding his prior award, Plaintiff argues the ALJ neglected to consider that award without justification and erroneously stated that there was no such evidence in the record. Even without the presumption of disability, Plaintiff argues his mental impairments are severe based on his use of psychotropic

medications, reports of auditory hallucinations, and medical reports of other psychiatric symptoms, including depression and anxiety.[4]

Plaintiff's second purported error is based on the ALJ's rejection of the opinion of examining psychologist, Dr. Schnurr. Dr. Schnurr diagnosed Plaintiff with depression NOS, psychosis NOS, cannabis dependency by history, and cocaine abuse by history. (Record at 614.) Plaintiff contends that the ALJ rejected Dr. Schnurr's opinion without providing legitimate reasons based on substantial evidence. Specifically, the ALJ stated "[t]here is no longitudinal evidence as to the duration or severity of the claimant's mental health disorder" despite the fact that Dr. Schnurr did consider Plaintiff's prior award of benefits for mental impairments relating back to 2002. (Record at 19; Motion at 9 (arguing it was error not to consider longitudinal evidence per 20 C.F.R. § 416.920a(c)(1)).)

Moreover, the ALJ favored the conclusions of the non-examining psychiatrist over Dr. Schnurr. *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995) ("[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."). Plaintiff argues that Dr. Schnurr's opinion offered "valid insight into the longitudinal nature of his disability, rather than just a snapshot, as the ALJ erroneously conclude[d]." (Motion at 9.) The ALJ also purportedly erred by disregarding Dr. Schnurr's finding that Plaintiff suffers from Psychosis NOS, based on his auditory hallucinations. Rather than believing this finding, the ALJ substituted his own medical impression to conclude that these fears resulted from a rational fear.

As to the third purported error, Plaintiff argues that the ALJ disregarded evidence of his prior benefit award and therefore failed to determine his RFC based on relevant evidence. While a claimant is generally responsible for providing evidence that the ALJ will use to make the determination, the SSA is responsible for developing a complete medical history and making "every

---

[4] Plaintiff argues that these errors were not harmless because his mental impairments were not considered in step three and were not afforded due weight in the RFC analyses at steps four or five. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (no error where ALJ neglected to list condition as severe impairment because ALJ nonetheless discussed the condition at subsequent steps of sequential analysis). The errors were also not harmless because Plaintiff's functional limitations were not properly reflected in the hypotheticals posed by the ALJ to the VE.

8

reasonable effort" to help obtain medical reports. (Motion at 11 (citing 20 C.F.R. § 416.912(d)–(e)).) *See also Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) ("In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."). Plaintiff argues the failure to consider the prior award harmed him because the ALJ specifically identified a lack of longitudinal evidence of his impairments as a basis for rejecting Dr. Schnurr's opinions, even though she *did* consider the prior award.

Finally, Plaintiff argues that the ALJ failed to include all of Kimmins' functional limitations in the VE hypotheticals and did not account for non-exertional limitations, such as being anxious or having difficulty maintaining attention, concentrating, or understanding or remembering instructions. *See Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.") (citations omitted). In addition, Plaintiff argues that the ALJ failed to demonstrate how Plaintiff's daily activities (such as taking care of his quadriplegic son, driving, watching television, and interacting with his children) can translate into substantial gainful activity, nor how these activities undermined the credibility of his claims of disability.

The Court begins with Plaintiff's first purported error—that the ALJ erroneously held Plaintiff's mental impairments were non-severe.

### C.   ALJ's Determination that Plaintiff's Mental Impairments Were Non-Severe at Step Two

#### 1.   Presumption of Continued Disability

Plaintiff initially argues that he enjoys a presumption of continued disability with regard to his January 2009 application based on his SSI benefits award in 2002. *See Oritz v. Commissioner of Social Sec.*, 425 F. App'x 653, 655 (9th Cir. 2011) (citing *Perry v. Heckler*, 722 F.2d 461, 464 (9th Cir. 1983) for the proposition that a claimant "enjoys a presumption of continued disability created by a prior finding of disability")). In *Ortiz*, the claimant had twice been determined to have a severe mental impairment by two different ALJs, but a subsequent application—made after her benefits were terminated for failure to supply requested documentation—was denied at the step two. *Id.* at 654. Recognizing that a finding of no disability at step two is typically appropriate where

there is a "total absence of objective evidence of severe medical impairment," the court noted that there was evidence in the claimant's medical history indicating a severe mental impairment by virtue of the two prior ALJ's determinations. *Id.* at 655 (citations omitted). The court suggested that, at a minimum, the ALJ could have fulfilled his affirmative duty to supplement the claimant's medical record, to the extent it was incomplete, by "considering her previous medical history, including the results of her prior psychological examination." *Id.* Ultimately, the court held that remand was required to permit the ALJ to continue the five-step analysis. *Id.*

Defendant responds that Plaintiff is not entitled to a presumption of disability. "[W]hen a claimant's benefits are suspended for 12 consecutive months because of incarceration and thereby terminated, the Commissioner's regulations do not provide for reinstatement of benefits upon the claimant's release from custody." (Cross-Motion at 3 (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008)).) In *Stubbs-Danielson*, the Ninth Circuit examined, among other things, whether a claimant, who had previously received SSI benefits and subsequently went to prison, was entitled to a presumption of disability based on the earlier receipt of benefits. *Id.* at 1172. Under 20 C.F.R. sections 416.1325 and 416.1335, a claimant's benefits are suspended upon incarceration and terminated after 12 months of continuous suspension. While benefits may be resumed when an otherwise eligible recipient is released from custody, the regulations "provide for no such reinstatement where a recipient's eligibility has been terminated after 12 consecutive months of suspension." *Id.* at 1172 (holding there was no basis for a presumption of continuing disability where the claimant's reapplication came more than one year—specifically, six years—after termination of benefits). Here, Plaintiff's benefits were suspended in May 2003 upon incarceration, his benefits terminated in July 2004, and he was not released until December 2008. As such, Defendant argues no presumption of continued disability exists in this case.

The Court agrees with Defendant that Plaintiff is not entitled to a presumption of disability under *Stubbs-Danielson* where, as here, his re-application for benefits occurred well over 12 months after the termination of his benefits. *Id.* at 1172. Notably, Plaintiff appears to concede this point in his Reply. Rather than substantively addressing *Stubbs-Danielson* or the presumption argument, Plaintiff argues only that "[e]ven [a]bsent a [p]resumption of [c]ontinued [d]isability," the objective

10

medical evidence requires a finding that his mental impairments were severe. (Reply at 5.) The Court finds that no presumption of continued disability applies in the instant case.

### 2. ALJ's Disregard of the Prior Benefits Award and Other Indications of Mental Impairment

Plaintiff next argues that the ALJ improperly disregarded his prior award of benefits in determining that his mental impairments were not severe at step two despite the objective medical evidence offered to support the conclusion that they were severe.[5] This evidence included his previous benefits award and references thereto in his claims file, evidence of his then-present use of psychotropic medications, Dr. Schnurr's report, and references in his treating medical records to auditory hallucinations and other psychiatric symptoms.

Defendant summarily responds that "Plaintiff has failed to explain how such evidence from his 2002 award of SSI benefits is relevant to his current 2009 claim of disability, almost seven years later. Moreover, the existing medical record appears to be fully developed and sufficient for adjudication, with evidence dated at least as early as 2002, and the ALJ carefully considered that record." (Cross-Motion at 7 (citing Record at 13, 262–779).) Defendant also argues that—unlike the case here—an ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." (Cross-Motion at 7 (citing *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)).)

As set forth above, the regulations require that a claimant seeking SSI disability benefits bears the burden of proving disability by providing evidence of medical impairments. 20 C.F.R. § 416.912(a), (c). However, the Social Security Administration has its own responsibilities regarding obtaining evidence. Specifically:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application *unless there is a reason to believe that development of an earlier period is necessary* or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

---

[5] This argument implicates Plaintiff's first and third purported errors, as summarized in Section III.B, *supra*.

11

20 C.F.R. § 416.912(d) (emphasis supplied); *see id.* § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence. . . . [B]efore we make a determination that you are not disabled, we are responsible for developing your complete medical history, including . . . making every reasonable effort to help you get medical reports from your own medical sources."). When evaluating the degree of functional limitation for mental impairments, the SSA engages in "a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation" including "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R. § 404.1520a(c)(1); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1.

Moreover, an ALJ may not discuss only those portions of the treatment record that favor the ultimate conclusion. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1984) (ALJ cannot ignore competent evidence that suggest a result opposite of his conclusion). "[It is] legal error where ALJ's findings completely ignore medical evidence without giving specific, legitimate reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (ALJ erred in limiting his review of claimant's medical records to a search for anemia, scoliosis, back pain, and fatigue and ignoring medical evidence of claimant's other impairments without explanation) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408–09 (9th Cir. 1986)). Where an ALJ makes one rational interpretation of the evidence among several, the Court must uphold his decision. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

Here, despite the ALJ's statement that "there [wa]s no evidence in this record of any prior determination of disability," the Court finds that there was evidence in the Record indicating Plaintiff was awarded SSI benefits in 2002 for Schizophrenic, Paranoid, and Other Functional Psychotic Disorders, with a secondary diagnosis of Personality Disorders. (Record at 156–57, 170, 173, 190, 660.) Plaintiff and his counsel attempted to provide the ALJ with information regarding the prior award such that the medical records associated with that claim could be obtained. Plaintiff informed the ALJ of his prior benefits at the hearing held on May 13, 2010 when asked about where his

records would be located. (*Id*. at 33.)⁶  In addition, Plaintiff's attorney raised the prior award in the pre-hearing brief to the ALJ sent on February 18, 2011. (*Id.* at 249.)

Based on Plaintiff and his counsel's repeated references to the prior award, there was "reason to believe that development of an earlier period [than the 12 months preceding the month in which Plaintiff filed his application] [wa]s necessary" before the ALJ could make a determination regarding whether he was disabled. 20 C.F.R. § 416.912(d). The record does not disclose adequately how the ALJ came to the conclusion that the record was devoid of a prior determination of disability or what efforts, if any, were made to obtain the previous claim file or records. Accordingly, the Court finds that any medical evidence or history associated with that prior award was not developed nor were the specific reasons for ignoring the award provided. *Smolen*, 80 F.3d at 1282.

While Defendant argues that the ALJ "carefully considered" evidence dating "at least as early as 2002" (Cross-Motion at 7), the Record reflects that he considered evidence of Plaintiff's physical impairments dating back to 2002, but not his *mental impairments* from that time period. (Record at 13, 17.) Indeed, the Record contains evidence not only of the prior award, but of a 2002 medical report which described Plaintiff as being "[s]uspicious" and having flashbacks, nightmares, insomnia, hallucinations, anger, fleeting suicidal ideation, and depression. (*Id.* at 771 (diagnosing Plaintiff as having adjustment disorder with anxious and depressed mood).) The 2002 medical report further recommends Valium and Prozac as treatment for Plaintiff's symptoms. (*Id.*) As of March 2011, Plaintiff continued to take psychiatric medications Prozac and Trazadone. (*Id.* at 775.)

The Court further disagrees with Defendant that under *Mayes v. Massanari*, the ALJ's duty to develop the record here was not triggered because the evidence was not ambiguous and the record was adequate to allow for proper evaluation of the evidence. In *Mayes*, the claimant submitted evidence of herniated discs *five months after* the ALJ issued his decision that she was not eligible for disability insurance benefits. 276 F.3d at 459. Mayes argued that the ALJ "should have developed the record and determined that Mayes had herniated discs even before [the doctor] reached his diagnosis." *Id.* Noting that Mayes was attempting to improperly shift the burden of proving disability to the ALJ, the Ninth Circuit explained that in Mayes' case, "[t]he record before the ALJ

---

⁶ In response, the ALJ implied that he would not need the medical records associated with the prior benefits award—only the records covering "the last few years." (Record at 33.)

was neither ambiguous nor inadequate to allow for proper evaluation of the evidence." *Id.* at 460. Unlike in *Mayes*, Kimmins does not seek to have additional evidence of disability considered after the ALJ rendered his decision. Moreover, *Mayes* does not speak to the situation where a claimant identifies a prior award to the ALJ and thereby provides reason for the ALJ to develop a complete medical history for a time period outside of the 12 months prior to the application. Likewise, *Mayes* does not support Defendant's argument that the duty to develop the record was not triggered because the medical record was sufficiently developed for adjudication. In this case, the ALJ does not appear to have developed the full medical record despite being the fact that the prior claims file would necessarily contain some form of medical evidence.

Finally, the Court disagrees with Defendant that Plaintiff has not shown evidence regarding his prior benefits award (including any related medical evidence) is not relevant to the application at issue. Not only was the ALJ responsible for developing Kimmins' complete medical history (20 C.F.R. §§ 416.912(d) & 416.945(a)(3)), but the regulations explicitly require that that ALJ consider "all relevant evidence to obtain a longitudinal picture of [a claimant's] overall degree of functional limitation" for mental impairments. 20 C.F.R. § 404.1520a(c)(1). Medical records associated with Plaintiff's prior award in 2002 are directly relevant to obtaining this longitudinal picture.

Here, medical information underlying Plaintiff's prior award should have been considered by the ALJ. No explanation or reason was provided by the ALJ for ignoring the prior finding of disability. By not developing the record relating thereto, ALJ effectively ignored potentially relevant medical evidence without giving specific, legitimate reasons for doing so. As such, the Court finds error was committed.

**3. Whether the Step Two Finding That Plaintiff's Mental Impairments Were Not Severe Was Harmless**

Plaintiff argues that an error at step two in deeming an impairment non-severe may be considered harmless where the ALJ nonetheless considers the impairment in the subsequent steps of analysis. *Lewis*, 498 F.3d at 911 (ALJ's error in neglecting to list bursitis at step two was harmless because he "extensively discusses [claimant's] bursitis at Step 4 of the analysis" and the "decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4"). Here, Plaintiff argues the ALJ's error was not harmless because his mental impairments were not considered in step

three nor in determining his RFC at steps four and five. Plaintiff also argues that functional limitations relating to his mental impairments were not accounted for in the VE hypotheticals.

In addition, Plaintiff contends that his previous diagnosis of Schizophrenic, Paranoid, and Other Functional Psychotic Disorders and secondary diagnosis of Personality Disorders were "of a degree of severity to meet Social Security's restrictive standards for an award of benefits." (Reply at 3.) Those same impairments are at issue in this case, yet the ALJ found the same impairments to be non-severe based on a lack of evidence.

Finally, Plaintiff argues that the ALJ rejected Dr. Schnurr's medical opinions, which he characterized as "slim findings," because they were "of limited evidentiary value, as [they were] based only on a snapshot." (Record at 18–19.) The ALJ also rejected her opinions because "[t]here is no longitudinal evidence as to the duration or severity of the claimant's mental health disorder, and the mere fact that he received mental health treatment does not disturb the State agency opinions [to which the ALJ afforded great weight], especially in light of the claimant's poor credibility as to his drug use." (*Id.* at 19.) Plaintiff emphasizes that Dr. Schnurr actually did consider his prior award in making her findings (*id.* at 612) and that his determination of disability and related medical records constitutes "longitudinal evidence" that the ALJ claimed was lacking. In failing to consider the prior award and specifically identifying a lack of longitudinal evidence as a basis for rejecting Dr. Schnurr's opinions—even though she did consider the prior award—Plaintiff argues that the ALJ's error cannot be deemed harmless.

The Court agrees that this error was not harmless. An ALJ must provide an explanation when he rejects "significant probative evidence." *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). As discussed above, no efforts were made to obtain medical evidence underlying Plaintiff's prior award and such information would have been relevant to Plaintiff's application for benefits, at least as related to the longitudinal nature of his impairments. The ALJ specifically rejected the opinions of Dr. Schnurr, the only doctor to have examined Plaintiff, in part because the longitudinal nature of his mental impairments could not be established.[7] Moreover, Plaintiff and his counsel affirmatively raised the

---

[7] Dr. Schnurr observed that Plaintiff seemed depressed, guarded, and suspicious. (Record at 615.) Dr. Schnurr also considered evidence in Plaintiff's prior SSI benefits application and diagnosed him

15

prior award to the ALJ and thereby identified a time period outside of the 12 months preceding the application date for which the record could, and should, have been developed. But, for unstated reasons, the ALJ did not develop this record and failed to account for why he did not do so beyond erroneously stating that no such evidence existed.

A comparison of the facts here to *Aker v. Astrue*, No. EDCV 11-1374 JC, 2012 WL 1605103, (C.D. Cal. May 8, 2012) demonstrates how the error was not harmless. In *Aker*, the claimant received benefits from 1999 until he was incarcerated in January 2007, and reapplied for benefits thereafter. *Id*. at *1, 3. Like Kimmins, Aker argued that the ALJ did not adequately develop the record because he failed to obtain records of Aker's prior benefits award. *Id*. at *3. The *Aker* court held that the ALJ's duty to develop the record was *not* triggered because: (i) Aker pointed "to no specific medical evidence in [his] prior SSI claim file which reflected any impairment" relevant to his subsequent SSI claim; and (ii) Aker merely speculated that the prior award "might reflect some continuing impairment." *Id*. at *4 (plaintiff's attorney stated at the hearing that he had "no idea" what underlying impairment served as the basis for the prior award). In sum, Aker did not demonstrate that any records from his prior SSI claim constituted significant or probative evidence of his limitations and/or medical condition in that case.

*Aker* can be distinguished from the instant case in two ways. First, while Kimmins—like Aker—did not identify specific medical evidence in his prior SSI claim file for the ALJ, at least one medical report in the Record corroborated Plaintiff's claims of mental impairment back in 2002. In addition, Kimmins likely did not have access to his prior claims file such that he could specifically identify pieces of additional evidence for the ALJ. Rather, the Record contained multiple references to a prior award (Record at 156–57, 170, 173, 190, 660) and the ALJ was at least twice directed by Plaintiff and counsel to the existence of a prior award (*id.* at 33, 249), which triggered a duty of the ALJ to pursue the medical records underlying that award. 20 C.F.R. §§ 416.912(d), 416.945(a)(3) & 404.1520a(c)(1).

Second, there is a stronger connection between the impairments underlying Kimmins' prior award and those that he asserts are continuing impairments that justify benefits on the instant

---

with depression NOS, psychosis NOS, cannabis dependency by history, and cocaine abuse by history. (*Id.* at 614.)

16

application. Kimmins was previously found disabled based on "Schizophrenic, Paranoid, and Other Functional Psychotic Disorders" and a secondary diagnosis of "Personality Disorders." (Record at 156, 249.) Following his incarceration, Plaintiff applied for disability benefits based on diagnoses of depression NOS, psychosis NOS, chronic kidney disease (stage 3), chronic asthma, high blood pressure, and lung disease. (*Id.* at 249.) Here, Kimmins' prior award is likely probative and relevant to the issue of whether those impairments still exist today, such that Kimmins may be entitled to benefits. This is wholly unlike the situation in *Aker*, where claimant's attorney stated he had "no idea" what the previous impairment was and could not show the prior award was at all relevant to the pending application.

The failure to consider potential significantly probative evidence carried over into further steps of the five-step analysis. Not only did the ALJ reject Dr. Schnurr's opinions, but the RFC determination did not account for Plaintiff's mental impairments nor did the VE hypotheticals account for non-exertional demands resulting from mental impairments. Notably, when Plaintiff's attorney added limitations based on Dr. Schnurr's observations to the hypothetical, the VE testified that there would be no jobs that Plaintiff could perform. (Record at 54–55.)

The Court finds that the ALJ failed to develop the record and subsequently failed to consider medical evidence relating to the prior award without sufficient explanation. This resulted in a less than complete examination of the longitudinal nature of Plaintiff's mental impairments and affected the RFC determination. In light of these findings, the Court remands this matter for further administrative proceedings, with instructions that the ALJ consider Plaintiff's prior award and related medical evidence to the extent that the medical bases underlying the prior award have been raised by Plaintiff in the application at issue in this action.

**IV.   CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross-Motion for Summary Judgment. This action is hereby **REMANDED** for further administrative proceedings as set forth herein.

This Order terminates Dkt. Nos. 19 & 20.

**IT IS SO ORDERED**.

Date: October 4, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**